CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
APR 27 2023
LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| GEORGE WEATHERFORD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:22-cv-00103 |
| | ) | |
| v. | ) | **MEMORANUDM OPINION** |
| | ) | |
| SALVATION ARMY and | ) | By:   Hon. Thomas T. Cullen |
| LIEUTENANT HODGES, | ) |         United States District Judge |
| | ) | |
| Defendants. | ) | |

In late 2021, Plaintiff George Weatherford ("Plaintiff") was hired as a seasonal bell ringer for Defendant The Salvation Army. He alleges that The Salvation Army and his former manager, Defendant Antonio Hodges[1] ("Hodges") (collectively "Defendants"), discriminated against him when they terminated him approximately a month later. According to Plaintiff, although Defendants claimed that he was being fired because he had disrespected a Wal-Mart employee, he believes that he was actually fired because of his race and his disability status, and because he voiced complaints about inferior assignments while on the job, in violation of various federal civil rights protections.

This matter is before the court on Defendants' motion to dismiss. (ECF No. 34.) For the reasons discussed below, the court will grant that motion in part. The court will dismiss Plaintiff's claims of race and disability discrimination but permit his claim of unlawful retaliation to proceed.

I. **BACKGROUND**

---

[1] Within The Salvation Army, Hodges has apparently attained the rank of Lieutenant.

The facts of the case are set forth more fully in the court's prior Opinion granting Defendants' first motion to dismiss. (*See* Mem. Op., Jan. 10, 2023 [ECF No. 31].) But briefly, The Salvation Army hired Plaintiff, who describes himself as "a Black man," as a seasonal bell ringer for the 2021 holiday season. (*See* Am. Compl. p. 1 [ECF No. 33].) As the ubiquitous "Red Kettles" are an important source of funds for The Salvation Army, bell ringers are incentivized to maximize their collected donations through prizes and giveaways. (*See id.* at 1–2.) Specifically, Plaintiff alleges that the top two earners for the 2021 holiday season were each eligible to receive a "Wide screen TV." (*Id.*) And because high-traffic locations naturally result in more donations, location matters for bell ringers who were competing for these top prizes. (*Id.* at 2.) Conversely, less desirable postings, and fewer donations reduced a bell ringer's chances of winning the grand prize.

Plaintiff alleges that Hodges, his supervisor, consistently deployed him to local storefronts with minimal foot traffic but routinely assigned two of Plaintiff's "White" co-workers to the main entrance of the Danville Wal-Mart and Sam's Club stores, locations that regularly yielded the highest donations. (*Id.* at 1.) After a few weeks, the co-workers positioned in front of the Wal-Mart were "so far ahead no one could catch up with [them.]" (*Id.* at 2.) Plaintiff was frustrated by the placements and consistently voiced his frustration to Hodges. (*Id.* at 1 ("Before I was fired I would complain every morning before we left . . . .").)

On December 13, 2021, Plaintiff was stationed at the pharmacy entrance of the Danville Wal-Mart store. (*Id.*) While on his break, he found $24 in cash in the parking lot, unadorned and crumbled up. (*Id.* at 2) When a passerby, who Plaintiff did not realize was a Wal-Mart manager, approached him about the money and requested he turn it over to her so

that it might be returned to its true owner, Plaintiff refused. (*Id.*) A few days later, Plaintiff was fired from his position with The Salvation Army. (*Id.*) Hodges told Plaintiff that he had been fired at the behest of the Danville mayor, who wished to keep The Salvation Army in Wal-Mart's good graces. (*Id.* at 2–3.) But Plaintiff claims he confronted the mayor later, who denied having said anything of the sort. (*Id.* at 3.) Instead, Plaintiff contends he was fired for unlawful reasons.

Plaintiff originally filed suit in this court on August 1, 2022, alleging (as the court interpreted his complaint) age discrimination, race discrimination, and unlawful retaliation. On January 10, 2023, the court granted Defendants' motion to dismiss for failure to state a claim on all counts. (ECF No. 31.) But in doing so, the court gave Plaintiff 14 days to file an amended complaint, advising him to "clearly identify each claim he is asserting, and support each claim with factual allegations." (*Id.* at 8.) Plaintiff filed a letter on January 20, 2023, that the court interprets as an amended complaint. (ECF No. 33.) Although Plaintiff failed to state his claims clearly, the court has construed his filing to state claims for (1) race discrimination, (2) unlawful retaliation, and (3) disability discrimination; Plaintiff withdrew his previously alleged age discrimination claim. (*Id.*) The case is now before the court on Defendants' motion to dismiss Plaintiff's Amended Complaint. (ECF No. 34.)

## II.   STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

Plaintiff is proceeding *pro se*, and for this reason his "complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (2007) (cleaned up). Nevertheless, his complaint must state a right to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678. Moreover, "this liberal construction does not require the court to ignore clear defects in pleading or to conjure up questions never squarely presented in the complaint." *Jefferies v. UNC Reg'l Physicians Pediatrics*, 320 F. Supp. 3d 757, 760–61 (M.D.N.C. 2018) (cleaned up).

### III.    ANALYSIS

Defendants contend that Plaintiff's Amended Complaint should be dismissed for three reasons: first, he does not allege sufficient facts to state a claim for discrimination under Title VII of the Civil Rights Act ("Title VII"); second, he fails to state claim for discrimination under the American with Disabilities Act ("ADA"); and third, even if he has stated sufficient facts for an ADA claim, Plaintiff has failed to exhaust his administrative remedies. The court will address each argument in turn.

1. **Age Discrimination in Employment Act**

In ruling on Defendants' first motion to dismiss, the court construed Plaintiff's original Complaint to state a claim for age discrimination in violation of the Age Discrimination in Employment Act, or Title VII. (ECF No. 31.) In his Amended Complaint, Plaintiff states: "I never asked for this trail [*sic*] to be based on my age. I told the Clerk . . . my age at that time and she obviously Decided [*sic*] to put that in my deposition." (Am. Compl. at 2.) Later in his Amended Complaint, Plaintiff states he "was not fired because of [his] age." (*Id.* at 3.) Accordingly, Plaintiff has expressly withdrawn any claim of age discrimination related to his termination.

**2. Race Discrimination in Violation of Title VII**

Title VII prohibits an employer from discharging or discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). "An employee need not allege specific facts to make out a prima facie case." *Jefferies*, 320 F. Supp. 3d at 760 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). He must, however, allege sufficient facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In his Amended Complaint, Plaintiff states, "[B]y [Hodges] being a Black man discriminating against his own race is crazy, because if it wasn't for people like me, who marched in the Civil Rights movement in 1963, Lt. Hodges wouldn't even have the job he has

today." (Am. Compl. at 3.) Additionally, Plaintiff alleges—with a cursory reference to Title VII—that "what Hodges did to me was a violation of those rights towards me." (*Id.*)

Plaintiff's allegations stem from his central complaint that he, a Black man, was mistreated during his firing by Hodges, another Black man. Plaintiff alleges that "Hodges has lied on several things to me." (*Id.*) Chief among them, Plaintiff claims, was a text message conversation that Hodges purportedly had with the Mayor of Danville regarding Plaintiff's continued employment. Plaintiff alleges that Hodges "showed me a text that he said the Mayor of Danville, VA sent him, instruct[ing] him to terminate me, because Walmart was Salvation Army's largest contributor in Danville, VA." (*Id.*) Plaintiff further claims that the Mayor, Alonzo Jones, was a personal friend of his and that he approached Mayor Jones at Danville Community College shortly after he was fired. (*Id.*) In that interaction, Mayor Jones allegedly denied the existence of any such conversation with Hodges. (*Id.*)

Based on these factual allegations, the court concludes that Plaintiff strongly disapproved of the manner in which Hodges terminated him from his position with The Salvation Army. But Plaintiff has failed once again to allege that his race played a role in the decision to terminate him. *See* 42 U.S.C. § 2000e-2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race . . . was a motivating factor for any employment practice . . . ."). Rather, as evidenced by the references to Mayor Jones, he alleges that he was fired to keep Wal-Mart, "Salvation Army's largest contributor," happy. While Plaintiff, at various points in his Amended Complaint, alleges preferential treatment for White employees and grievances related to Hodges's behavior in firing Plaintiff, at no point

does he allege that his race was a "motivating factor" in the decision to terminate him, nor does he allege facts that could support such an inference.[2]

Absent facts from which the court could infer that his race was a factor in the decision to *fire* him, Plaintiff has failed to allege a plausible claim of race discrimination.

### 3. Retaliation Under Title VII

But Plaintiff's retaliation claim does not suffer the same fate. To establish a prima facie case of retaliation under Title VII,[3] a plaintiff must establish "that he engaged in a protected activity, that the employer took an adverse action against him, and that a causal relationship existed between his protected activity and the employer's adverse action." *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006) (citing *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir.2004)). An individual engages in a protected activity when he "opposes any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e–3(a). The Fourth Circuit has held that this sort of "opposition activity" is protected not only when it opposes an actual violation of Title VII, but also "when it responds to an employment practice that the employee *reasonably believes* is unlawful." *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338–39 (4th Cir. 2006) (emphasis in the original) (citing *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406–07 (4th Cir. 2005)), *overruled on other grounds by Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015).

---

[2] Plaintiff's claim for race discrimination in violation of Title VII was dismissed initially on account of the same deficiency.

[3] Defendants made no specific argument to dismiss this claim, and it is easy to see why. Plaintiff's Amended Complaint did not comply with the court's instructions to "clearly identify each claim he is asserting" (Mem. Op. pg. 8, Jan. 10, 2023 [ECF No. 31]), so he does not directly state that he is asserting a retaliation claim. Nevertheless, in its prior Opinion, the court stated that it interpreted Plaintiff's pleadings to raise such a claim. Accordingly, Defendants were on notice that such a claim was, at a minimum, apparent to the court. But Defendants cannot be faulted for viewing these pleadings more narrowly than the court has. Accordingly, the court reviews this claim under 28 U.S.C. § 1915.

"Because the analysis for determining whether an employee reasonably believes a practice is unlawful is an objective one, the issue may be resolved as a matter of law." *Id.* at 339 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001)).

A plaintiff in a Title VII case is only "required to allege facts to satisfy the elements of a cause of action created by" Title VII to survive a motion to dismiss. *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015); *see also Brown v. AECOM, Inc.*, No. 7:21-CV-00438, 2022 WL 263551, at *3 (W.D. Va. Jan. 27, 2022). "Requiring a plaintiff to plead a prima facie case would amount to a 'heightened pleading standard' that would conflict with Federal Rule of Civil Procedure 8(a)(2)." *McCleary-Evans*, 780 F.3d at 584 (quoting *Swierkiewicz*, 534 U.S. at 512). The proper "inquiry is whether [Plaintiff] alleges facts that plausibly state a violation of Title VII 'above a speculative level.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (quoting *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010)).

Giving Plaintiff's complaint a liberal construction, he alleges that, shortly after he complained about White employees getting better, more lucrative bell ringing assignments with The Salvation Army, he was terminated. (*See* Am. Compl. at 1 ("Before I was fired I would complain every morning before we lift the building because we would have a meeting before we left the building to get on the bus.").) Those allegations plausibly state a claim for retaliation. An employee's complaint in response to a reasonable belief that he was illegally discriminated against satisfies the definition of a "protected activity." *See, e.g., Bryant v. Aiken Reg'l Med. Ctrs.*, 333 F.3d 536, 543–44 (4th Cir. 2003) (finding a protected activity where plaintiff complained to supervisor about her suspicion that she had not been promoted because of racial discrimination); *Gallina v. Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.*,

123 F. App'x 558, 562–63 (holding that a plaintiff's belief of illegal discrimination was reasonable where she repeatedly complained and expressed concern that she was being subjected to gender discrimination).

In the present case, there is no question that The Salvation Army took adverse action against Plaintiff—termination from one's job is the quintessential adverse employment action. And while Defendants argue that the true reason for Plaintiff's termination was because of the incident at the Wal-Mart, Plaintiff's allegation that his firing took place shortly after he complained about more lucrative assignments (and therefore better odds at winning a valuable prize) for white employees is sufficient to establish causation in prima facie showing. *See, e.g.*, *Tinsley v. First Union Nat. Bank.*, 155 F.3d 435, 443 (4th Cir. 1998) ("Normally, very little evidence of a causal connection is required to establish a *prima facie* case."); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) (holding that merely the closeness in time between the filing of a discriminatory charge and an employer's firing "certainly satisfies the less onerous burden of making a prima facie case of causality").

In its previous ruling on Defendants' first motion to dismiss, the court noted that it was unclear whether Plaintiff had first exhausted his administrative remedies through the EEOC, as required. (ECF No. 31.) In their brief in support of the present motion to dismiss, however, Defendants included a copy of Plaintiff's EEOC Charge of Discrimination. (EEOC Charge [ECF No. 35-1].) In the EEOC Charge, Plaintiff alleges essentially all of the same

major facts alleged in his Amended Complaint.[4] For that reason, the court finds that Plaintiff has exhausted his administrative remedies as to his retaliation claim.

As a final point, Plaintiff's Title VII claims are only proper against The Salvation Army, not Hodges. *See Lissau v. S. Food Servs., Inc.*, 159 F.3d 177, 178 (4th Cir. 1998) ("Employees are not liable in their individual capacities for Title VII violations."); *Colleton v. Charleston Water Sys.*, 225 F. Supp. 3d 362, 367 (D.S.C. 2016) ("Individual employees are not proper defendants for Title VII claims . . . ."). Accordingly, this claim cannot proceed against Hodges, and will be dismissed as to him.

### 4. Discrimination on the Basis of Disability

Finally, Defendants and the court construe Plaintiff's Amended Complaint to allege that Hodges also discriminated against him because he was disabled, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a). (Am. Compl. at 3.) Unlike his claim of retaliation, however, Plaintiff did not present a disability discrimination claim to the EEOC and has therefore failed to exhaust his administrative remedies as to any such claim.

The ADA incorporates the enforcement procedures of 42 U.S.C. § 2000e *et seq.*, "including the requirement that a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court." *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012); *see* 42 U.S.C. §§ 2000e–5(b), (f)(1). "Rather than 'a formality to

---

[4] Although Plaintiff did not check the box for retaliation in his EEOC Charge, he clearly alleged that he (and "everyone") complained about the assignments, "but it did no good." (EEOC Charge.) "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Servs. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). "[T]he failure to check the 'retaliation' box is not alone determinative of whether Plaintiff's EEOC charge can support the retaliation claim he asserts in his complaint." *Johnson v. Portfolio Recovery Assocs., Inc.*, 682 F. Supp. 2d 560, 571 (E.D. Va. 2009).

be rushed through,' this exhaustion requirement is 'an integral part of the Title VII enforcement scheme.'" *Id.* (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005)). Allowing the EEOC the "first crack at these cases respects Congress's intent 'to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Id.* (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)). Title VII's requirement that a plaintiff file a charge with the EEOC prior to bringing suit constitutes a mandatory requirement, albeit a non-jurisdictional one. *See Murphy v. Fed. Rsrv. Bank of Richmond*, No. 3:19-cv-180, 2020 WL 365104, at *4 n.7 (E.D. Va. Jan. 22, 2020) (citing *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1852 (2019)). "Therefore, a court must enforce the rule if a party 'properly raise[s] it.'" *Id.* (quoting *Fort Bend Cnty.*, 139 S. Ct. at 1849).

Here, Defendants have properly raised the exhaustion requirement, and the court must enforce it. Plaintiff's EEOC Charge is devoid of any mention of a disability or a claim of disability discrimination. (*See* EEOC Charge.) Plaintiff's allegations in the EEOC Charge focus exclusively on purported racial discrimination and unlawful retaliation. (*See id.*) Accordingly, the court finds that Plaintiff has failed to exhaust his disability discrimination claim with the EEOC, and his claim must be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's allegations fail to state a claim for race or disability discrimination, but he has alleged sufficient facts to state a claim for retaliation under Title VII of the Civil Rights Act. As such, that claim will proceed.

- 12 -

The Clerk is directed to forward copies of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 27th day of April, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE